**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| ISLAND SAINTS LLC, d/b/a BELLOWS INTERNATIONAL, | ) ) ) | Case No. 3:24-cv-0051 |
| Plaintiff, | ) ) ) | ACTION FOR TRADEMARK INFRINGEMENT, DECLARATORY |
| v. | ) ) | JUDGMENT, TEMPORARY RESTRAINING ORDER AND |
| CARDOW, INC., | ) ) | PRELIMINARY INJUNCTION |
| Defendant. | ) ) ) | |

**ATTORNEYS:**

**CARL A. BECKSTEDT, III, ESQ.**
BECKSTEDT AND ASSOCIATE
CHRISTIANSTED, U.S.V.I.
    *FOR PLAINTIFF ISLAND SAINTS, LLC D/B/A BELLOWS INTERNATIONAL,*

**KANAAN LE'ROY WHILHITE, ESQ.**
MOORE DODSON & RUSSELL
ST. THOMAS, U.S.V.I.
    *FOR DEFENDANT CARDOW, INC.*

**MEMORANDUM OPINION**

**Molloy, Chief Judge.**

    **BEFORE THE COURT** is Plaintiff Island Saints LLC, d/b/a Bellows International's ("Bellows") motion for temporary restraining order and preliminary injunction, filed on October 8, 2024. (ECF No. 2). In its motion and complaint, Bellows asserts ownership over the service mark "Magens Bay Rum," and seeks to enjoin Defendant Cardow, Inc. ("Cardow") from: 1) using the trademark or any "colorable imitation of the mark" as a trade name, trademark, service mark or domain name; 2) selling, distributing, or manufacturing any liquor in the United States Virgin Islands under the mark; or 3) taking any other action likely to cause confusion among members of the public as to the origin of the trademark.

*Island Saints LLC, d/b/a Bellows Int'l v. Cardow, Inc.*
Case No. 3:24-cv-0051
Memorandum Opinion
Page 2 of 19

For the reasons stated below, the Court will grant Bellow's request for a temporary restraining order and scheduled this matter for a hearing on the request for a preliminary injunction.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

This is a trademark case concerning the mark "Magens Bay Rum." Bellows is Island Saints LLC's "preeminent beverage distribution division," selling "beer, liquor, wine, non-alcoholic beverages, and tobacco products" in the U.S. Virgin Islands. ECF No. 3 at 2. Island Saints is a Delaware limited liability company registered to do business in the Virgin Islands since 1980 as a foreign Limited Liability Company, and it is a corporation organized and existing under the laws of the Virgin Islands with a business address in St. Thomas. ECF No. 3-1, ¶¶ 2, 3. Bellows asserts that, on information and belief, Cardow is also a corporation organized and existing under the laws of the Virgin Islands. ECF No. 1. It is an established jewelry dealer in the Virgin Islands with its principal place of business in St Thomas. *Id.* Cardow also sells alcohol and liquor. ECF No. 3-1 ¶ 19, ECF 2 at 3. Both Bellows and Cardow sell rum, and both sell it under the label "Megans Bay Rum." *Id.*

According to Bellows' General Manager, Chanse McCain, Bellows imports its rum into the U.S. Virgin Islands under the trademark "Magens Bay Rum," and has sold rum under the trademark continuously since 2005. *Id.* at ¶¶ 5, 7. The rum is distilled and bottled by the Sazerac Company in Louisville, Kentucky, with "Magens Bay Rum" on the labeling. *Id.* at ¶ 6. Bellows entered into an agreement with the predecessor of Sazarac Company to provide rum for its Magens Bay Rum brand in 2005, which is also the same year that Bellows "developed and began using" its trademark. *Id.* at ¶¶ 6, 7. Bellows "entered into a business relationship" with the Megans Bay Authority "in which Bellows would produce rum exclusively" for the concession at Magens Bay in St. Thomas under the trademark "Megans Bay Rum." *Id.* at ¶ 5. It began distributing its "house branded rum" under the trademark "Megans Bay Rum" at Magens Bay on St. Thomas in October 2005. *Id.* at ¶ 8. Bellows sold 900 bottles of rum that first year. *Id.* Since then, Bellows has sold a total of 10,173 cases or 122,076 bottles of Magens

---

[1] The Court finds the following facts solely for the purposes of disposing of the motion for a temporary restraining order.

*Island Saints LLC, d/b/a Bellows Int'l v. Cardow, Inc.*
Case No. 3:24-cv-0051
Memorandum Opinion
Page 3 of 19

Bay Rum in the Virgin Islands and has generated over $458,000.00 in gross revenue from its rum sales alone. *Id.* at ¶ 12.

In 2024, Cardow registered the tradename "Magens Bay Rum" with the Government of the Virgin Islands and recently began selling rum under the name "Magens Bay Rum." ECF No. 3 at 14. It is not clear from the record exactly when Cardow began selling rum under the same name as Bellows, however, Cardow sells its rum to the Magens Bay Authority and other retail and restaurant establishments in the area where Bellows has previously sold its Magens Bay Rum. ECF No. 3-1, ¶ 19. On May 30, 2024, Cardow filed an application to register the mark "Magens Bay Rum" with the U.S. Patent and Trademark Office to claim trademark rights for its rum product.[2] *Id.* at ¶ 20*.* Cardow registered the mark with the Government of the Virgin Islands on or about May 28, 2024. ECF No. 3 at 4.

Bellows first learned that Cardow had registered the mark when it received a cease-and-desist letter from the Virgin Islands Department of Licensing and Consumer Affairs ("DLCA"). ECF No. 3-1, ¶ 15. DLCA's letter directed Bellows to discontinue selling rum under the mark "Megans Bay Rum" because the product "has been registered and copyrighted by another entity." *Id.*, Ex. 2. Although Bellows had previously registered its label using "Magens Bay Rum" with DLCA, DLCA informed Bellows that its label registration had been lost "due to damage from hurricanes and because, after the Covid-19 epidemic, the DLCA switched to electronic filing and subsequently lost their paper records." *Id.* at ¶¶ 16, 17. Notwithstanding, Bellows has in its possession a copy of a letter that it sent to DLCA in 2016 seeking approval of a label change for both its white and gold variations of Magens Bay Rum, as required under 8 V.I.C. § 152.[3] *Id*. at ¶ 18, Ex. 3.

Bellows contends that it has lost more than 50% of its anticipated revenue from 2024 as a result of DLCA's cease and desist letter and that it continues to lose revenue each day. *Id.* at ¶ 22. Bellows further argues that it has accumulated considerable name recognition and goodwill in the "Megans Bay Rum" mark and that "Cardow has knowingly and

---

[2] Serial No. 98577036.ECF No. 1-3 at ¶ 20.
[3] Title 8 V.I.C. § 152 provides that "No person subject to the licensing provisions of chapter 1 of this title shall ship, transport, receive, deliver, sell or offer for sale any alcoholic beverages within the United States Virgin Islands until the following information has been filed with the Board: (1) the name of the brand, trade name or other distinctive characteristic by which such alcoholic beverages are bought and sold. . . . "

*Island Saints LLC, d/b/a Bellows Int'l v. Cardow, Inc.*
Case No. 3:24-cv-0051
Memorandum Opinion
Page 4 of 19

intentionally usurped Bellows' tradename" to take advantage of the value of the brand that Bellows created. ECF No. 3 at 1, 14.  Bellows further asserts that Cardow's "Magens Bay Rum" uses Bellows' mark in a manner that is likely to cause consumer confusion and deceive the public regarding its source, sponsorship, or affiliation. *Id.* at 11, 12.

On October 8, 2024, Bellows filed its Complaint, alleging six[4] causes of action: Count 1 seeks declaratory judgment as to Bellow's rights in the mark "Megans Bay Rum"; Count 2 seeks declaratory judgment establishing that Cardow's mark lacks secondary meaning; Count 3 alleges federal trademark infringement pursuant to 15 U.S.C. §1125(a) under the Lanham Act; Count 4 alleges common law trademark infringement; Count 5 alleges common law unfair competition; and Count 6 alleges unlawful and/or unfair business practices pursuant to 14 V.I.C § 2172. ECF No. 1.

Bellows now petitions the Court for injunctive relief from harm to its product brand and its "MAGENS BAY RUM" mark.

## II. LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure governs the issuance of temporary restraining orders and preliminary injunctions. *See* Fed. R. Civ. P. 65. As this Court has recognized, the legal standards for the issuance of a temporary restraining order are the same as those for a preliminary injunction. *See Friends of Coral Bay v. Reliance Hous. Found., Inc.*, No. 2007-20, 2006 U.S. Dist. LEXIS 94988, at *3 (D.V.I. Jan. 26, 2006) (quoting *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D.Pa. 1994)). Courts apply a four-factor test when considering whether to grant preliminary relief. *See Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). Specifically, a movant must demonstrate: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that public interest favors such relief.  *Id.* (citing *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999). The first and second factors are "gateway factors" that the movant must establish. *Amalgamated Transit Union Local 85 v. Port Auth. of Allegheny Cty.*,

---

[4] Bellows' Complaint misnumbers Count 6 as Count 5, and it lists two counts as Count IV (Count IV Common Law Trademark Infringement and Count IV Unfair Competition). ECF No. 1.

*Island Saints LLC, d/b/a Bellows Int'l v. Cardow, Inc.*
Case No. 3:24-cv-0051
Memorandum Opinion
Page 5 of 19

39 F.4th 95, 103 (3d Cir. 2022). If these two gateway factors are satisfied, a court then determines whether "all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.*

Under Rule 65(b), a court may issue a temporary restraining order without notice to the adverse party only if the moving party provides "specific facts in an affidavit or a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why notice should not be required." Fed. R. Civ. P. 65(b). In addition, the movant must provide security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Furthermore, "[i]f the order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time." Fed. R. Civ. P. 65(b).

Great care must be taken prior to granting a temporary restraining order without notice. "As the Supreme Court has observed, 'our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted [to] both sides of a dispute.'" *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020). In this matter, Cardow has entered an appearance in this case and is aware that a motion for preliminary injunctive relief has been filed. *See* ECF No. 6. In fact, the parties have recently entered into a stipulation permitting Cardow to file an opposition to the instant motion by November 1, 2024, and to up until November 15, 2024, to file a responsive pleading to the complaint filed on October 8, 2024. *See* ECF No. 8. However, the Stipulation explicitly provides that "[t]he parties further agree that nothing herein shall prevent the Court from acting on the Plaintiff's request for a temporary restraining order as the Court may so determine to be appropriate based upon the Plaintiff's initial filings." *Id.* at 1.

Bellows seeks injunctive relief under its claims under federal trademark law pursuant to the Lanham Act. Based on Bellow's filings in this case, the Court finds it appropriate to

*Island Saints LLC, d/b/a Bellows Int'l v. Cardow, Inc.*
Case No. 3:24-cv-0051
Memorandum Opinion
Page 6 of 19

address the request for a temporary restraining order without a response from Cardow and

will promptly set this matter for a preliminary injunctive hearing.

### III.  DISCUSSION

 "As the Supreme Court long ago pointed out in *McLean v. Fleming*, [96 U.S. 245, 251

(1877)] 'What degree of resemblance is necessary to constitute an infringement is incapable

of exact definition, as applicable to all cases. All that courts of justice can do, in that regard,

is to say that no trader can adopt a trade-mark, so resembling that of another trader, as that

ordinary purchasers, buying with ordinary caution, are likely to be misled.' It is, however,

settled that the courts will protect a trade-mark owner against poaching by a competitor

who seeks to sell his goods as those of another"—whether that trademark is federally

registered or not.  *Morgenstern Chem. Co. v. G. D. Searle & Co.*, 253 F.2d 390, 392 (3d Cir.

1958).

Bellow's mark "Megans Bay Rum" is not a federally registered mark, but registration

with the United States Trade and Patent Office (USPTO) is not required for protection against

infringement under the Lanham Act. *See* 15 U.S.C. § 1057(c)(1) ("the filing of the application

to register [a trademark] shall . . . confer[] a right of priority, nationwide in effect, . . . against

any other person except for a person . . . ***who, prior to such filing, has used the mark.***")

(emphasis added); *see also*, *United States Pat. & Trademark Off. v. Booking.com B. V.*, 591 U.S.

549, 553 (2020) ("Even without federal registration, a mark may be eligible for protection

against infringement under both the Lanham Act and other sources of law.").

Bellows argues that Cardow is effectively seeking to sell its goods as those of Bellows'

and it now petitions the Court for injunctive relief pursuant to 15 U.S.C. §1125(a) of the

Lanham Act.

Section 1125(a) states in relevant part:

(a)(1) Any person who, on or in connection with any goods or services, or any
container for goods, uses in commerce any word, term, name, symbol, or
device, or any combination thereof, or any false designation of origin, false or
misleading description of fact, or false or misleading representation of fact,
which— (A) is likely to cause confusion, or to cause mistake, or to deceive as
to the affiliation, connection, or association of such person with another
person, or as to the origin, sponsorship, or approval of his or her goods,
services, or commercial activities by another person, or (B) in commercial

*Island Saints LLC, d/b/a Bellows Int'l v. Cardow, Inc.*
Case No. 3:24-cv-0051
Memorandum Opinion
Page 7 of 19

advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.S. § 1125(a).

This provision is "the foremost federal vehicle for the assertion of infringement of unregistered marks, names and trade dress. Claims made under it are often called false designation of origin or false association claims. To establish a false association claim, the owner of an unregistered mark has the burden of proving the existence of a protectable mark." *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 226 (3d Cir. 2017)(citations omitted).

### A. Likelihood of success on the merits

The Lanham Act defines trademark infringement as use of a mark so similar to that of a prior user as to be "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Likelihood of confusion under the Act is not limited to confusion of products; confusion as to source is also actionable. *See, e.g., Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 (3d Cir. 1992) (finding likelihood of confusion "exists when the consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark") (citation omitted).

To prove federal trademark infringement, "a plaintiff must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) (citing *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency*, Inc., 214 F.3d 432, 437 (3d Cir. 2000)). Even after satisfying these elements, however, "relief is limited in scope to where market penetration is significant enough to pose the real likelihood of confusion among the consumers in that area." *Parks,* 863 F.3d at 230 (citation omitted).

### 1. Whether Bellows has a Valid and Legally Protectable Mark

A valid and legally protectable mark must be 'distinctive,' which may be shown in one of two ways. *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 210, (2000). The first way is if

Case: 3:24-cv-00051-RAM-GAT    Document #: 17    Filed: 10/24/24    Page 8 of 18

*Island Saints LLC, d/b/a Bellows Int'l v. Cardow, Inc.*
Case No. 3:24-cv-0051
Memorandum Opinion
Page 8 of 19

the mark is inherently distinctive by its very nature. *Parks,* 863 F.3d at 223. A mark is inherently distinctive if "its intrinsic nature serves to identify a particular source." *Wal-Mart Stores,* 529 U.S. at 210. "The most distinctive marks—those that are "'arbitrary' ('Camel' cigarettes), 'fanciful' ('Kodak' film), or 'suggestive' ('Tide' laundry detergent)" . . . are 'inherently distinctive.'" [5] *Wal-Mart Stores,* 529 U.S. at 210–211. The second category is comprised of "marks that are merely descriptive of the product." *Parks,* 863 F.3d at 223. These are not considered inherently distinctive and "secondary meaning must be proven before such a name will be protectable." *Id.* Bellows asserts that its mark is distinctive and has acquired secondary meaning.

"Secondary meaning" is a term of art in trademark law that refers to a mental association in buyers' minds between the alleged mark and a single source of the product. *Parks*, 863 F.3d at 226. It exists when the mark is "interpreted by the consuming public to be not only an identification of the product or services, but also a representation of the origin of those products or services." *Parks*, 863 F.3d at 231 (citations omitted). No consensus exists as to the elements of secondary meaning. *American Scientific Chemical, Inc. v. American Hospital Supply Corp.*, 690 F.2d 791, 792 (9th Cir. 1982). However, the Third Circuit has relied on the following factors, to the extent relevant: sales and advertising leading to buyer association; length of use; exclusivity of use; the fact of copying; customer surveys; customer testimony; the use of the mark in trade journals; the size of the company; the number of sales; the number of customers; and actual confusion. *See Parks,* 863 F.3d at 231.

Bellows asserts that it has been using the "Magens Bay Rum" mark continuously for nearly twenty years to market its rum in the Virgin Islands and doing so exclusively until Cardow began selling rum under the same mark. *See* ECF No. 3-1. Furthermore, Bellows provides evidence of its marketing and sales efforts to penetrate the Virgin Islands market. *Id.* This includes examples of advertising since at least 2016 and its annual sales totals, which peaked in 2023 with 1,158 cases of rum sold. *Id.* at ¶¶11-13.

---

[5] "Distinctiveness for purposes of trademark registration is often expressed on an increasing scale: word marks may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. Lanham Trade-Mark Act § 2, *United States Pat. & Trademark Off. v. Booking.com B. V.,* 591 U.S. 549, 553 (2020) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, (1992).

*Island Saints LLC, d/b/a Bellows Int'l v. Cardow, Inc.*
Case No. 3:24-cv-0051
Memorandum Opinion
Page 9 of 19

At this juncture, Bellows presents sufficient evidence to demonstrate that it is recognized in the Virgin Islands as the single source in the minds of the consuming public for Megans Bay Rum, and that secondary meaning exist in its mark "Megans Bay Rum." Accordingly, the Court finds that Bellows has made a preliminary showing that "Megans Bay Rum" is a valid and legally protectable mark. We now turn to ownership of the mark.

### 2. Ownership

In determining ownership of a trademark, a court considers: 1) priority of use and 2) sufficient market penetration. *See Lucent Info. Mgmt. v. Lucent Techs., Inc.*, 186 F.3d 311, 316-17 (3d Cir. 1999) ("a party must introduce evidence demonstrating that its trademark has achieved market penetration significant enough to pose the real likelihood of confusion among the consumers in that area") (citation omitted). "With respect to ownership of unregistered marks, the first party to adopt a trademark can assert ownership rights, provided it continuously uses it in commerce." *Ford Motor Co. v. Summit Motor Prods.*, 930 F.2d 277, 292 (3d Cir. 1991). This first-in-use approach incorporates "the well-established common law principle of 'first-in-time, first-in-right.'" *Covertech Fabricating, Inc. v. TVM Bldg. Prods.,* 855 F.3d 163, 170 (3d Cir. 2017)*.* The right "to enjoin another from use of the mark, must be based upon actual use and can be enforced only in areas of existing business influence." *Nat. Footwear, Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383, 1395 (3d Cir. 1985). Sales volume is an indicator of market penetration, but it must be more than '*de minimis.*' *See Lucent*, 186 F.3d at 317.

Bellows adequately demonstrates ownership of the "Megans Bay Rum" mark. First, it adopted the mark before Cardow. Second, Bellows demonstrates market penetration by its record of continuous sales under the mark in the Virgin Islands since 2005, along with evidence of marketing activity since at least 2016. Moreover, according to the declaration of Bellow's General Manager, Bellows has sold a total of 10,173 cases of Magens Bay Rum generating sales of over $458,000 from 2006 to May 2024. ECF No. 3-1, ¶11-12. At this stage of the litigation, the Court concludes that Bellows has demonstrated priority of use of its mark over Cardow and sufficient market penetration to establish ownership of "Magens Bay Rum."

*Island Saints LLC, d/b/a Bellows Int'l v. Cardow, Inc.*
Case No. 3:24-cv-0051
Memorandum Opinion
Page 10 of 19

### 3. Likelihood of confusion

Besides demonstrating validity and ownership in the mark, the burden is on Bellows to also show that Cardow's use of the mark "Megans Bay Rum" causes a likelihood of confusion. *See A&H Sportswear,* 237 F.3d at 210-11.

There are two types of "likelihood of confusion" claims: "direct confusion" and "reverse confusion." *Freedom Card, Inc. v. JP Morgan Chase & Co.*, 432 F.3d 463, 470 (3d Cir. 2005). "In a direct confusion case, the consuming public may assume that the established, senior user is the source of the junior user's goods. In a reverse confusion case, the consuming public may assume the converse; that is, that the junior, but more powerful, mark user is the source of the senior user's products." *Checkpoint Sys. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 301 (3d Cir. 2001). The basic issue is the same in both scenarios— "whether the consuming public is likely to be confused about the source of products of the respective mark users." *Id.* at 302.

Bellows asserts direct confusion here. The essence of its claim is that Cardow, a junior user of the mark, is attempting "to benefit from the hard earned goodwill in Bellows' 'Magens Bay Rum' mark" and "take advantage of the value of the brand that Bellows has created." ECF No. 3 at 1, 14; s*ee also A&H,* 237 F.3d at 205 (explaining that a direct confusion claim results when "a junior user of a mark is said to free-ride on the reputation and good will of the senior user by adopting a similar or identical mark"); *Fisons Horticulture*, 30 F.3d at 479 (explaining that "the junior user trades on the senior user's good name" and is "therefore saved much of the expense of advertising to create market recognition of its mark").

Regardless of whether the claim is one of direct or reverse confusion, courts have adopted a ten-factor test to determine likelihood of confusion in the marketplace. See *A & H*, 237 F.3d at 212 (quoting *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 462 (3d Cir. 1983)). Commonly known as the *Lapp* factors, they are as follows:

> 1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, competing or not

*Island Saints LLC, d/b/a Bellows Int'l v. Cardow, Inc.*
Case No. 3:24-cv-0051
Memorandum Opinion
Page 11 of 19

> competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market.

*Kos Pharms.*, 369 F.3d at 709 (citing *Lapp,* 721 F.2d at 463).

By applying the test, the Court attempts to "move into the mind of the roving consumer and determine whether the labels create the same overall impression when viewed separately." *Checkpoint.*, 269 F.3d at 276. "The closer the relationship between the products . . . and the more similar their sales contexts, the greater the likelihood of confusion." *Lapp,* 721 F.2d at 462 (citation omitted).

### a. Similarity of Bellows' and Cardow's marks.

"The single most important factor in determining likelihood of confusion is mark similarity." *A & H,* 237 F.3d at 216. "The relationship of the products is close enough to lead to the likelihood of confusion when the goods are similar enough that a consumer could assume they were offered by the same source." *Kos Pharms.,* 369 F.3d at 703. *See American Plan Corp. v. State Loan & Finance Corp.,* 365 F.2d 635, 639 (3d Cir. 1966), *cert. denied,* 385 U.S. 1011, 87 (1967) ("Where the names are identical . . . the names in themselves are evidence of likelihood of confusion.").

Both products are essentially the same: bottles of rum. And both use the same words as marks on their labels: "Magens Bay Rum." The labels, however, are not identical. The typeface is similar, but Bellows' label displays "Megans Bay Rum" all in large capital lettering, while Cardow's label uses large typeface only on "Megans Bay," leaving "Rum" in smaller lettering. In addition, Cardow's label features the shoreline of a beach in the background; Bellows' label displays what appears to be a large hibiscus flower. Although not identical, the marks are similar enough. Given that the exact same products are labeled with nearly the exact same wording, this first factor weighs in favor of Bellows.

### b. Strength of Bellow's mark.

The second *Lapp* factor looks to "the strength of the *owner's* mark." *Lapp*, 721 F.2d at 463 (emphasis added). "Under the Lanham Act, stronger marks receive greater protection" because they "carry greater recognition, [so that] a similar mark is more likely to cause confusion." *Kos Pharms.* 369 F.3d at 715 (citing *A&H*, 237 F.3d at 222). In evaluating the strength of the mark under *Lapp*, courts consider: "(1) the mark's distinctiveness or conceptual strength (the inherent features of the mark) and (2) its commercial strength (factual evidence of marketplace recognition)." *Freedom Card,* 432 F.3d at 472 (citing *A & H*, 237 F.3d at 221).

First, as addressed earlier, the conceptual strength – or distinctiveness – of a mark is measured by classifying the mark in one of four categories ranging from the strongest to the weakest: "(1) arbitrary or fanciful (such as 'KODAK'); (2) suggestive (such as 'COPPERTONE'); (3) descriptive (such as 'SECURITY CENTER'); and (4) generic (such as 'DIET CHOCOLATE FUDGE SODA')." *Freedom Card, 432 F.3d* at 472  (citing *A&H,* 237 F.3d at 221). "Stronger marks receive greater protection." *Freedom Card* at 472  (citing *A&H* at 222). Second, in determining a mark's commercial strength, the focus is on marketplace recognition*. Freedom Card* at 472  (citing *A & H* at 223).

Since the two marks are so similar and use the same words, one is not stronger than the other conceptually; however, commercially, Bellows may claim more marketplace recognition based on its continuous use of the mark for nineteen years. *See Lapp,* 721 F.2d at 463 (finding plaintiff's mark to be "a strong one" because plaintiff had used it for over fifty years, and the mark had become "quite distinctive" of the plaintiff's product). Furthermore, Bellows provides evidence of advertising and promotional activity in the marketplace since at least 2016. ECF No. 3-1. Conversely, Cardow only began using the mark in commerce relatively recently. Accordingly, the Court finds this factor weighs in favor of Bellows.

### c. Consumer care in purchase.

The third *Lapp* factor weighs against finding a likelihood of confusion "when consumers exercise heightened care in evaluating the relevant products before making purchasing decisions." *Kos Pharms.*, 369 F.3d at 715 (citing *Checkpoint*, 269 F.3d at 284). "The greater the care and attention, the less the likelihood of confusion." *Versa Prods. Co. v. Bifold*

*Co. (Mfg.)*, 50 F.3d 189, 204 (3d Cir. 1995)(citing *Fisons,* 30 F.3d at 476 n.12). There is no evidence in the record of this case as to the level of care and attention consumers exercise in evaluating these competing products. Thus, at this early stage of the litigation and given that the burden of production is on Bellows as the moving party, the Court finds that this factor weighs against a finding of a likelihood of confusion.

> d. **Length of time Cardow has used the mark "Megans Bay Rum" without evidence of actual confusion arising.**

"When parties have used similar marks for a sufficient period of time without evidence of consumer confusion about the source of the products, there is an inference that future consumers will not be confused either." *Fisons,* 30 F.3d at 476 (citing *e.g. Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1230 (3d Cir. 1978)) (finding no likelihood of confusion in part because "defendant's mark had been utilized . . . for over forty years without any evidence of actual confusion.").

Although Bellows provides no evidence of actual confusion, it argues that Cardow is creating confusion by selling its product in the same locations and to the same establishments as Bellows. The record is void of the exact date that Cardow began selling rum under the Magens Bay Rum label, however, Bellows first learned that Cardow had registered the "Megans Bay Rum" mark with the Virgin Islands government on or about May 28, 2024. In addition, Cardow only recently filed an application to register the mark with the U.S. Patent and Trademark Office (USPTO) on May 30, 2024.[6] Because Cardow's use of the mark apparently began only recently, little time has passed for evidencing consumer confusion. As such, this factor weighs against a finding of a likelihood of confusion.

> e. **Cardow's intent in adopting the "Magens Beach Rum" mark.**

"Evidence of intentional, willful and admitted adoption of a mark closely similar to the existing mark[] weighs strongly in favor of finding [a] likelihood of confusion." *Checkpoint*, 269 F.3d at 286 (quotation omitted); *see also Morgenstern Chem. Co. v. G. D. Searle & Co.*, 253 F.2d 390, 394 (3d Cir. 1958) (finding that defendant "trod a very narrow course when it adopted the name Mictine with full knowledge of the prior use of the name Micturin

---

[6] Registered under Serial No. 98577036. ECF No. 3.

by the plaintiff"). Notwithstanding, this inquiry extends beyond asking whether a defendant purposely chose its mark to promote confusion and appropriate the prior user's good will. *Fisons*, 30 F.3d at 479*; see e.g. Lapp,* 721 F.2d at 463 (relying on district court's finding that while defendant "may have acted innocently, [it] was careless in not conducting a thorough name search for American uses of the name").

Considering the size of the Virgin Islands market and the number of years that Bellows has been using the mark at issue, the Court finds that, at the very least, it is unlikely that Cardow carefully evaluated whether the "Megans Bay Rum" mark was already in use for marketing rum. This factor weighs in Bellows' favor.

### f.  Actual Confusion

Evidence of actual confusion is not required to prove likelihood of confusion. *Checkpoint*, 269 F.3d at 291 (citing *Versa Prods.*, 50 F.3d at 205); *see also Fisons*, 30 F.3d at 476 ("While evidence of actual confusion would strengthen plaintiff's case, it is not essential."). Here, Bellows concedes "there is no evidence of actual confusion." ECF No. 3 at 12.

### g.  Whether Bellow's and Cardow's goods are marketed through the same channels of trade and advertised through the same media.

Under this factor, "courts examine whether buyers and users of each parties' goods are likely to come across the goods of the other, creating an assumption of common source affiliation or sponsorship. . . . The test is whether the goods are similar enough that a customer would assume they were offered by the same source." *Checkpoint*, 269 F.3d at 286 (citation omitted).

Cardow owns retail outlets and Bellows identifies strictly as a distributor; however, Cardow sells its brand of "Magens Bay Rum" to the same retail and restaurant establishments in the Virgin Islands where Bellows has been selling its "Magens Bay Rum" brand for over 19 years.  ECF No. 3-1. Given the similarities between the products and their labels, this strongly implies that buyers and users of the products are likely to encounter both Cardow's and Bellows' products and likely assume they are offered by the same source. Accordingly, the Court finds this factor weighs slightly in favor of Bellows.

### h.  Extent to which the targets of the parties' sales efforts are the same.

*Island Saints LLC, d/b/a Bellows Int'l v. Cardow, Inc.*
Case No. 3:24-cv-0051
Memorandum Opinion
Page 15 of 19

When parties target their sales efforts to the same consumers, there is a stronger likelihood of confusion. *Checkpoint,* 269 F.3d at 289 (citing *Lapp*, 721 F.2d at 463-64); *see Kos Pharms.,* 369 F.3d at 722 ("An example of similar sales efforts would be where "parties target their sales efforts to the same consumers.").

Bellows asserts that "there is significant if not complete similarity in the sales targets of Bellows and Cardow as both seek to sell to U.S. Virgin Islands consumers." ECF No. 3. As mentioned above, Cardow sells its brand of "Magens Bay Rum" to the same retail and restaurant establishments in the Virgin Islands where Bellows has been selling its "Magens Bay Rum" brand. Without progressing to examination of the media used in marketing or the manner in which both parties use their sales forces, the Court finds that this factor weighs in Bellow's favor because of the similarity of the products and the relatively small size of the target Virgin Islands market.

### i. Relationship of the goods.

This factor focuses on the nature of the *products* themselves, asking whether it would be reasonable for consumers to associate them or see them as related. Courts have recognized that "the near-identity of the products or their similarity of function are key to assessing whether consumers may see them as related." *Kos Pharms.,* 369 F.3d at 723 (citing *A&H,* 237 F.3d at 215). Bellows asserts that "the near identity of the products and the fact that both rums are sold at similar locales suggests a relationship of the goods in the minds of consumers." The Court agrees. This factor weighs in Bellows' favor.

### j. Evidence of converging markets and other facts suggesting that the consuming public might expect Bellows to manufacture both products.

"In assessing this factor, courts may look at the nature of the products or the relevant market. . . . or any other circumstances that bear on whether consumers might reasonably expect both products to have the same source." *Kos Pharms.,* 369 F.3d at 724.

The record supports Bellows here because the similarity of the marks, the products, the target market, and the target consumers suggest a likelihood that the consuming public might expect that both products originate from the same source. *See, e.g.*, *Fisons*, 30 F.3d at 480 (evidence that products "are closely related and are used together" and that "other companies market both products" supports finding that [the] public might expect senior user

*Island Saints LLC, d/b/a Bellows Int'l v. Cardow, Inc.*
Case No. 3:24-cv-0051
Memorandum Opinion
Page 16 of 19

to offer products of junior user); *Lapp*, 721 F.2d at 464 (close relationship between products that may be used together supports finding that "even sophisticated customers . . . would find it natural or likely" that plaintiff might offer product similar to defendant's).

In weighing the Lapp factors, the most important factor – mark similarity – favors Bellows. The parties' products and their target market are also similar. The Court finds that consumers could easily expect both products to be manufactured by a single source. In addition, the Virgin Islands market is relatively small, and Cardow chose a name and mark for its product that was already in use on a similar product. All but three of the ten *Lapp* factors weigh in favor of Bellows. After careful evaluation of the evidence before it, the Court is persuaded that a reasonable factfinder weighing the *Lapp* factors in accordance with the correct legal standards would find Bellows is likely to succeed on the merits of its Lanham Act trademark infringement claim.

### B.  Irreparable Harm

Injury to goodwill constitutes irreparable harm. *See, e.g., Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 196 (3d Cir. 1990) (finding lack of control over one's mark creates the potential for "damage to reputation [, which] constitutes irreparable injury for the purpose of granting a preliminary injunction in a trademark case."). "Once the likelihood of confusion caused by trademark infringement has been established, the inescapable conclusion is that there was also irreparable injury." *Pappan Enters. v. Hardee's Food Sys.*, 143 F.3d 800, 805 (3d Cir. 1998) (citation omitted). The Court could end its analysis here as a matter of law; however, for the sake of thoroughness, we proceed to evaluate the last two factors.

### C.  Balance of Hardships

"A basic purpose behind the balancing analysis is to ensure that the issuance of an injunction would not harm the infringer more than a denial would harm the mark's owner." *Opticians*, 920 F.2d at 197. The question here is whether, and to what extent Cardow will suffer irreparable harm if a temporary restraining order is issued. *Id.* at 192.

Courts have recognized that "the injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself."

*Island Saints LLC, d/b/a Bellows Int'l v. Cardow, Inc.*
Case No. 3:24-cv-0051
Memorandum Opinion
Page 17 of 19

*Kos Pharms.,* 369 F.3d at 728 (citing *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharm. Co.,* 290 F.3d 578, 596 (3d Cir.2002)). Courts also recognize that "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor." *Kos Pharms.* at 729 (citing *Novartis* at 597).

If Cardow – the junior user– did not already know Bellows was using the "Megans Bay Rum" mark beforehand, a diligent effort at research would have revealed it. Given Bellow's strong showing of likelihood to succeed, and the fact that Cardow accepted risk of injury by ignoring Bellow's claim of infringement,[7] the Court is persuaded that no reasonable factfinder could conclude the irreparable harm Cardow might suffer pending resolution of this matter on the merits outweighs the irreparable harm that Bellows would continue to suffer absent an injunction. *See Kos Pharms,* 369 F.3d at 729. Accordingly, this factor weighs in favor of injunctive relief.

### D. Public Interest

"As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Kos Pharms.,* 369 F.3d at 730 (citing *AT&T v. Winback & Conserve Program, Inc.,* 42 F.3d 1421, 1427 n.8 (3d Cir.1994). Bellows argues that public interest favors injunctive relief because Cardow's use of Bellows' "Magens Bay Rum" mark is likely to deceive the public. ECF No. 3. The Court agrees.

"The most basic public interest at stake in all Lanham Act cases is the interest in prevention of confusion, particularly as it affects the public interest in truth and accuracy." *Kos Pharms.,* 369 F.3d at 730; *see also Pappan Enters.,* 143 F.3d at 807 ("[p]ublic interest. . . in a trademark case. . . is most often a synonym for the right of the public not to be deceived or confused.") (citation omitted). Accordingly, the Court finds that public interest favors injunctive relief.

### E. Security

As stated above, the Court finds that Bellows is entitled to injunctive relief temporarily restraining Cardow from use of the "Megans Bay Rum" mark or selling its rum

---

[7] Bellows asked Cardow to cease use of its mark and Cardow refused. ECF No. 3-1 at ¶21.

*Island Saints LLC, d/b/a Bellows Int'l v. Cardow, Inc.*
Case No. 3:24-cv-0051
Memorandum Opinion
Page 18 of 19

under the mark. However, pursuant to Rule 65(c) of the Federal Rule of Civil Procedure, Bellows—as movant—must first provide security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

Although "the amount of the bond is left to the discretion of the court, the posting requirement is much less discretionary." *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 103 (3d Cir. 1988) ("While there are exceptions, the instances in which a bond may not be required are so rare that the requirement is almost mandatory.") In other words, Rule 65(c) "mandates that a court when issuing an injunction must require the successful applicant to post adequate security." *Id.*

Bellows does not address the bond requirement in its motion; however, it seeks injunctive relief to protect its trademark rights. Under the circumstances of this case, the Court finds that security in the amount of $10,000 is appropriate and will require Bellows to post a bond of $10,000 before the temporary restraining order will go into effect.

### III.    CONCLUSION

For the reasons stated above, the Court finds that Bellows has demonstrated an entitlement to temporary injunctive relief on its claim for trademark infringement under the Lanham Act. However, the provisions of any temporary restraining order against Cardow will not go into effect until Bellows posts adequate security.  An accompanying order of even date will follow.


**Date:**  October 24, 2024                                          /s/  *Robert A. Molloy*
                                                                                  **ROBERT A. MOLLOY**
                                                                                  **Chief Judge**